IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States **Courts**
Southern District of **Texas**
ENTERED

APR 0 5 2006

Michael N. Milby, Clerk **of Court**

| | | |
|---|---|---|
| ANTHONY MAURICE JACKSON, | § | |
| TDCJ #1099260, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-3172 |
| | § | |
| DOUG DRETKE, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Anthony Maurice Jackson (TDCJ #1099260) has filed a petition under

28 U.S.C. § 2254, seeking a federal writ of habeas corpus to challenge a state court

conviction. The respondent moves for summary judgment, arguing that Jackson is not

entitled to federal habeas corpus relief. (Docket Entry No. 17). Jackson has not filed a

formal response and his time to do so has expired. Instead, Jackson seeks a continuance to

conduct discovery in the form of document production and he asks for appointment of

counsel. (Docket Entry Nos. 21, 22, 23). The respondent has also filed a motion to

supplement his original summary judgment motion to raise the defense of limitations.

(Docket Entry Nos. 24, 25). After considering all of the pleadings, the state court records,

and the applicable law, the Court grants the respondent's original motion for summary

judgment, denies the petitioner's motions, and dismisses this case for reasons set forth below.

## I.     BACKGROUND

Jackson and two co-defendants, Rafter Irving and Ralph Watson, were accused of robbing a Conroe convenience store at gun point.  One of the victimized clerks identified Irving and Watson as two of the three men who robbed the store.  In a written statement to police, Watson implicated a former co-worker who was Irving's cousin (Jackson) as the third man who participated in the armed robbery.  Jackson later made inculpatory statements about the aggravated robbery to Watson, who had agreed to cooperate in the police investigation by wearing a wire.  Based on this information, a grand jury in Montgomery County, Texas, returned an indictment against Jackson in cause number 01-11-07749-CR, charging him with aggravated robbery with a deadly weapon, namely, a firearm.  The State enhanced that indictment with allegations that Jackson had at least one other prior felony conviction for aggravated robbery.

Watson pled guilty to the charges and agreed to testify against Jackson.  Irving also pled guilty to the offense.  In addition to these potential witnesses, the State had in its possession the audiotape of the conversation between Watson and Jackson, in which Jackson made inculpatory statements about his role in the offense.  In light of the evidence against him, Jackson agreed to abandon his planned alibi defense and plead guilty to the aggravated robbery charges alleged in the indictment.  In exchange, the State agreed to abandon the enhancement allegation and to recommend a twelve-year prison sentence.  Consistent with that agreement, the 359th District Court of Montgomery County, Texas, sentenced Jackson on April 1, 2002 to serve twelve years in prison.

2

Jackson filed a "motion for new trial" in an attempt to withdraw his guilty plea based on allegations of ineffective assistance of counsel.  Jackson complained that his attorney did not challenge the audiotape's authenticity or properly prepare a defense of alibi.  Jackson complained further that his attorney misinformed him about the Texas accomplice-witness rule, which requires corroboration of testimony by an accomplice.  The trial court denied the motion following a hearing on May 29, 2002.

Jackson filed a notice of appeal.  Jackson's appointed appellate attorney filed a brief under *Anders v. California*, 386 U.S. 738 (1967), certifying that a professional evaluation of the record disclosed no meritorious issue for appellate review.  Separately, the *Anders* brief noted that the general notice of appeal filed by the attorney who represented Jackson during his motion for new trial failed to adequately invoke appellate jurisdiction.  Jackson filed his own *pro se* appellate brief, arguing that: (1) the trial court abused its discretion by accepting the plea where Jackson "raised issues" about his innocence; (2) he was denied effective assistance of counsel and his guilty plea was rendered involuntary as a result of his attorney's deficient performance; and (3) the trial court abused its discretion by refusing to grant the motion for new trial.  Without addressing the merits of Jackson's claims, the intermediate appellate court dismissed the appeal for want of jurisdiction.  *See Jackson v. State*, No. 07-02-0283-CR (Tex. App. — Amarillo Jan. 15, 2004).  Jackson did not appeal further by filing a petition for discretionary review with the Texas Court of Appeals.

Jackson challenged his conviction collaterally by filing a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure.  In that

3

application, Jackson argued that he was entitled to relief because: (1) he was denied effective assistance of counsel in connection with his guilty plea; (2) the trial court abused its discretion by accepting the guilty plea after Jackson "raised numerous issues and complaints" about his counsel's performance; (3) the trial court and defense counsel violated Jackson's right to due process by failing to assure that all procedural safeguards were applied in his case; and (4) there was no evidence or insufficient evidence to support the conviction. After considering the entire record, the state habeas corpus court entered fact findings and conclusions of law, which recommended denying relief. The Texas Court of Criminal Appeals agreed and denied relief, without a written order, based in the state habeas corpus court's findings. *See Ex parte Jackson*, No. 60,803-01 (Tex. Crim. App. Feb. 9, 2005).

Jackson now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his aggravated robbery conviction. His pending federal petition raises claims that are similar to the ones presented in state court. The respondent has filed a motion for summary judgment, arguing that Jackson is not entitled to relief. Jackson has not filed a response, although his discovery request points to the record and argues that he is entitled to prevail. Jackson seeks a continuance to obtain copies of documents found in his state court record. Jackson also requests appointment of counsel. The parties' contentions are addressed below under the applicable standard of review. The Court will first address the arguments raised in the respondent's original motion for summary judgment, before turning to the petitioner's motions and the respondent's supplemental motion.

4

## II.   RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A.   Summary Judgment Standard

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.   Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).   To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).   All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).   "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

5

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman,* 369 F.3d at 860 (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir. 1995).

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner,* 404 U.S. 519 (1972). Under this standard, pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines,* 404 U.S. at 521; *see also United States v. Pena,* 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.,* 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.,* 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less

6

stringent standards than formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

### B.     Federal Habeas Corpus Review Under 28 U.S.C. § 2254

The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The claims that Jackson presents were raised on state habeas corpus review and denied without a written order by the Texas Court of Criminal Appeals. A denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim). Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and not dismissed for procedural reasons.[1] *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the merits" as contemplated by the AEDPA).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court

---

[1]     Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief only if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief only if the state court correctly divined a legal principle from the Supreme Court's jurisprudence, but misapplied that principle to the facts. *See id*. A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly

9

established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Section 2254(d)(2) governs pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the evidence presented in the state court proceeding. *See Brewer v. Dretke*, 410 F.3d 773, 775 (5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified on denial of rehearing)). In addition, any factual findings made by the state court in deciding a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence to the contrary." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

## C.    Jackson's Guilty Plea

At the outset, the respondent maintains that Jackson is not entitled to relief because he fails to establish that his guilty plea was involuntarily made. "A guilty plea 'is more than a confession which admits that the accused did various acts.'" *United States v. Broce*, 488 U.S. 563, 570 (1989) (quoting *Boykin v. Alabama*, 395 U.S. 238 (1969)). "It is an 'admission that he committed the crime charged against him.'" *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 32 (1970)). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of the substantive crime." *Id.*

10

As a general rule, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). When a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, the plea must be upheld. *Diaz v. Martin*, 718 F.3d 1372, 1376-77 (5th Cir. 1983). Thus, criminal defendants have only a limited ability to challenge a conviction entered pursuant to a valid guilty plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 770 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, a voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including those claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th Cir. 2000).

The record shows that, before accepting Jackson's plea, the trial court admonished him in writing and in open court of the nature of the charges and the consequences of pleading guilty. (Court Reporter's Record, Guilty Plea, April 1, 2002, at 18-19; Clerk's Record, Admonishments, at 13-17). In response to the detailed written admonishments

11

provided by the trial court, Jackson averred that he understood the consequences of his plea, including the possible punishment, and stipulated that his decision to plead guilty was voluntary. (*See id*.). Jackson further stipulated that all of the "acts and allegations" in the indictment against him were "true and correct" by issuing the following judicial confession:

> I stipulate and admit that on or about August 5, 2001, in Montgomery County, Texas, I did then and there, along with co-defendant Rafter Vincent Irving and Ralph Bean Watson, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place [the victim] in fear of imminent bodily injury or death, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm.

(Clerk's Record, Stipulation of Evidence Exhibit #1, at 11). The written admonishments, stipulations, and judicial confession are signed by Jackson's counsel and the trial court, who confirmed that the instruments were "voluntarily and intelligently signed" by Jackson. (*Id.* at 12).

In addition to these written instruments, the trial court conducted a hearing in open court, during which Jackson voluntarily persisted with his guilty plea:

COURT:       So the reason I'm asking these questions is I'm required to look into whether or not a person is mentally competent to stand trial. Do you feel that you are mentally competent?

JACKSON:   Yes, sir.

COURT:       Did you understand all of the warnings and admonishments and all of the waivers in those documents that you signed in court here this morning?

JACKSON:   Yes, sir.

COURT:       This afternoon.

12

JACKSON:   Yes, sir.

COURT:   So you know what the range of punishment is, right?

JACKSON:   Yes, your Honor.

COURT:   I think you heard the prosecutor say it.  I will tell you again the range of punishment is not less than five years in prison nor more than 99 years or life in prison and a fine of up to $10,000 dollars.  You understand that, don't you, sir?

JACKSON:   Yes, sir.

COURT:   And you understand all about your right to plead not guilty and make the state prove the case against you.  You understand that, too, don't you?

JACKSON:   Yes, sir.

COURT:   And you understand by pleading guilty, you give up all of those rights, don't you?

JACKSON:   Yes, sir.

(Court Reporter's Record, Guilty Plea, April 1, 2002, at 25-26).  After further emphasizing the finality associated with the decision to plead guilty, the trial court found that Jackson's guilty plea was voluntary, accepted the plea, and approved the State's recommended sentence of twelve years in prison. (*See id*. at 27-31).

The Supreme Court has explained that the various advantages of the plea bargaining system "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  Thus, "the representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

13

proceedings. Solemn declarations in open court carry a strong presumption of verity." *Id.* at 74. Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir.1979). He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge*, 431 U.S. at 75). As discussed further below, the allegations by Jackson in this case do not surmount the barrier imposed by his written and oral attestations of voluntariness and to not warrant setting aside the guilty plea.

### D.    Ineffective Assistance of Counsel

Jackson argues that his "plea was not voluntary" as the result of his counsel's failure to conduct "adequate and proper pretrial investigations" and as a result of "erroneous advice of counsel." (Docket Entry No. 1, Petition, at 7). Jackson contends that his trial attorney should have attempted to challenge the validity of the audiotape recording of his conversation with Watson, in which Jackson was overheard to make incriminating statements, and that his attorney should have prepared family members to provide an alibi defense at trial. Jackson complains further that his attorney "misinformed" him about the applicability of the Texas statute governing testimony from an accomplice witness (the "accomplice-witness rule").

The state habeas corpus court rejected Jackson's ineffective-assistance claim for several reasons after making the following findings of fact based on testimony from Jackson's counsel given during the hearing on his motion for new trial:

14

- [T]here was no need to file a motion for discovery because the Montgomery County District Attorney's Office maintains an open file policy.

- [Jackson's counsel] did not interview Applicant's alibi witnesses because Applicant told him they were willing to say whatever trial counsel wanted them to say.

- Applicant and his family [were] kept apprised [sic] of the case.

- [Jackson's counsel] reviewed the robbery victim's statements in the district attorney case file.

- [Jackson's counsel] was aware of the accomplice witness rule when discussing the State's case with the Applicant.

- Applicant told [his counsel] that it was Applicant's voice on the audiotape recording of a conversation between Applicant and a co-defendant, Ralph Watson.

- Applicant's mother and girlfriend also told trial counsel that the voice on the audiotape was Applicant's.

*See Ex parte Jackson*, No. 60,803-01 at 274, Findings of Fact ¶¶ 6-12. These findings of fact are entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1), which Jackson has failed to rebut with clear and convincing evidence.[2]

Based on the foregoing fact findings, the state habeas corpus court issued three alternative conclusions about Jackson's ineffective-assistance claim:

- Applicant failed to prove by a preponderance of the evidence that trial counsel provided ineffective assistance of counsel.

---

[2]     As discussed further below, although Jackson has filed a discovery motion he does not demonstrate how any of the requested documents will rebut the presumption with the requisite clear and convincing evidence. Accordingly, his discovery request fails to raise a genuine issue of material fact.

- • Because Applicant's ineffective assistance of counsel claim was based entirely on the appellate record, his claim is not cognizable in a writ of habeas corpus. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

- • Applicant failed to affirmatively prove that, but for trial counsel's representation, Applicant would not have pleaded guilty. *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

*See Ex parte Jackson*, No. 60,803-01 at 274, Conclusions of Law ¶¶ 2-4. The pleadings submitted by Jackson make no effort to show that any of the state court's conclusions are contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent for purpose of prevailing under the federal habeas corpus statutes. *See* 28 U.S.C. § 2254(d)(1). Nevertheless, Jackson's ineffective-assistance allegations are examined below under the governing law.

As the respondent notes, Jackson's ineffective-assistance claim is barred by the doctrine of procedural default. One of the conclusions reached by the state habeas corpus court found that his claim was not cognizable on collateral review because it could have been raised on direct appeal. In Texas, it is clearly established that claims which could have been raised on direct appeal are barred from collateral review. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750

16

(1991). The record in this case does not support the application of any of these exceptions. Accordingly, Jackson's ineffective-assistance claim is barred as the result of his procedural default.

Alternatively, Jackson's claim for ineffective assistance of counsel lacks merit. Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally-deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To show deficient performance, he must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997) (citing *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993), *cert. denied*, 509 U.S. 921 (1993)). Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal v. Dretke*, 428 F.3d 543, 548 (5th

17

Cir. 2005) (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)).  Failure to prove

either prong will defeat an ineffective assistance claim. *See id*. (citing *Green v. Johnson*, 160

F.3d 1029, 1035 (5th Cir. 1998)).

In this instance, Jackson alleges that he received ineffective assistance in connection

with a guilty plea.  The Supreme Court has held that the two-part *Strickland v. Washington*

test applies where a defendant challenges a guilty plea based on ineffective assistance of

counsel with the following modification:

> The second, or "prejudice," requirement . . . focuses on whether counsel's
> constitutionally ineffective performance affected the outcome of the plea
> process.  In other words, in order to satisfy the "prejudice" requirement, the
> defendant must show that there is a reasonable probability that, but for
> counsel's errors, he would not have pleaded guilty and would have insisted on
> going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Clarifying the prejudice requirement further,

the Supreme Court has emphasized that a petitioner must demonstrate that "counsel's

deficient performance caused the outcome to be unreliable or the proceeding to be

fundamentally unfair."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  Thus, a reviewing

court must consider the following:

1. whether, but for counsel's error, the defendant would not have pleaded guilty
   but would have insisted upon going to trial; and

2. whether counsel's deficient performance caused the outcome to be unreliable
   or the proceeding to be fundamentally unfair.

*Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

### 1.    Failure to Challenge the Audiotape

Jackson alleges that his counsel's performance was deficient because he failed to challenge the validity of the audiotape.  As noted above, the state habeas corpus court found that Jackson's counsel conducted sufficient discovery by reviewing the State's open file, which included a lengthy and detailed report of the police investigation, as well as the audiotape of the Jackson making inculpatory statements to Watson about the offense.  The state habeas corpus court found that trial counsel did not challenge the authenticity of the audiotape because Jackson admitted that the statements on the tape were his and that Jackson's mother and girlfriend also identified the voice on the tape as belonging to Jackson. *See Ex parte Jackson*, No. 60,803-01 at 274, Findings of Fact, ¶¶ 11-12.  Although Jackson now disputes that the tape has been "falsified" in some manner, he does not allege or show that the statements to his attorney were untrue.[3]  Thus, Jackson has failed to rebut the presumption of correctness that obtains to these factual findings under 28 U.S.C. § 2254(e)(1), and he further fails to demonstrate that his counsel's performance was deficient.

---

[3]    Jackson's proposed discovery request on this issue presents nothing more than speculation that additional forensic examination of the tape will show that the tape was manufactured. As noted below, more than this is required to warrant discovery under Rule 6 of the Rules Governing Section 2254 Proceedings in the United States District Courts. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000) (permitting discovery only if and only to the extent that the district court finds good cause").

### 2.    Failure to Adequately Prepare an Alibi Defense

Jackson also complains that his attorney should have prepared family members to present an alibi defense.  Jackson points to affidavits from several family members and a neighbor that were presented in support of his motion for a new trial.  At the hearing on the motion for new trial, Jackson's attorney testified that he did contact Jackson's mother, grandmother, and girlfriend, but conceded that he did not speak to all of the witnesses listed by Jackson in support of a proposed alibi defense.  (Court Reporter's Record, Motion for New Trial, May 29, 2002, at 61-63).  Jackson's attorney explained, however, that he developed a concern about the use of an alibi defense because he was uncertain whether Jackson would take the stand and because Jackson told him that the witnesses would "say whatever [he] wanted them to say." (*Id.* at 61-63, 88).  Jackson's attorney emphasized to his client that sponsoring perjury was "something [he] could not do." (*Id.* at 88).  Based on this testimony, the state habeas corpus court rejected Jackson's ineffective-assistance claim concerning this issue and found that Jackson's attorney "did not interview Applicant's alibi witnesses because Applicant told him they were willing to say whatever trial counsel wanted them to say." *Ex parte Jackson*, 60,803-01 at 274, Findings of Fact, ¶ 7.  Thus, the state court found the attorney's testimony credible and rejected the proposed testimony found in the affidavits.

There is nothing in Jackson's pleadings or his proposed discovery request that has the potential to rebut this finding.  The record of the guilty plea proceeding shows that Jackson and his counsel had contemplated presenting an alibi defense until confronted with the

State's audiotape of Jackson's inculpatory statements to Watson, who had also agreed to testify against Jackson. Jackson, who clearly knew of the existence of his proposed alibi witnesses before pleading guilty, fails to show how any failure by his attorney to manufacture such a defense on his behalf could be considered deficient performance. In that respect, an attorney's strategic decision not to pursue an alibi defense of dubious legitimacy cannot be considered outside the realm of competent representation.

### 3.    Erroneous Legal Advice

Jackson complains further that his counsel's performance was deficient because he somehow "misinformed" him about the accomplice-witness rule. As a matter of Texas law, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. art. 38.14. Testimony from an accomplice witness is not inadmissible. If a witness is an accomplice, however, then a trial court is required to instruct the jury that it cannot use the accomplice-witness testimony unless there is also some independent evidence connecting the defendant to the offense. *See Herron v. State*, 86 S.W.3d 621, 631-32 (Tex. Crim. App. 2002). Incriminating statements made by a defendant, such as the ones made by Jackson during his taped conversation with Watson, are sufficient independent evidence to satisfy the corroboration requirement under the accomplice-witness rule.

Jackson does not explain with any detail how his attorney "misinformed" him about the applicability of the accomplice-witness rule. Nor does Jackson demonstrate how he was

21

prejudiced as a result. The Fifth Circuit has made clear that conclusory ineffective-assistance claims the type made by the petitioner do not merit federal habeas corpus relief. *See, e.g.,* *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim). Because Jackson fails to show that his counsel gave incorrect advice, or to allege sufficient facts demonstrating that his guilty plea was somehow tainted by misinformation, he fails to show that his counsel's performance was deficient. It follows that Jackson fails to demonstrate that the state habeas corpus court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, the clearly established *Strickland* standard.

### F.    Abuse of Discretion and Due Process Violations

In two related grounds, Jackson complains that the trial court abused its discretion by accepting the guilty plea after Jackson complained about his counsel's performance, thereby violating his right to due process.   The state habeas corpus court found as a matter of fact that Jackson's guilt plea was voluntary. *See Ex parte Jackson*, 60,803-01 at 274, Findings of Fact, ¶¶ 13-14.  The state habeas corpus court concluded further that, "[b]ecause it could

22

have been raised on appeal, [Jackson's] claim that the trial court abused its discretion in accepting his guilty plea is not cognizable in a writ of habeas corpus" under the rule in *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004). *See Ex parte Jackson*, 60,803-01 at 275, Conclusions of Law, ¶ 5. As the respondent notes, Jackson's failure to raise this claim properly on direct appeal results in a procedural bar to federal habeas corpus review.

Alternatively, the record shows that the trial court listened to Jackson's concerns and gave him every opportunity to change his plea. After Jackson expressed concerns about his counsel's failure to conduct an exuberant pretrial investigation, the trial court heard evidence from the prosecutor, who stated that Jackson's attorney had diligently reviewed the State's open file, as well as the audiotape, and that he had actively consulted with the attorney for co-defendant Rafter Irving in an effort to ensure that Irving would not testify against his client. (Court Reporter's Record, Guilty Plea Hearing, April 1, 2002, at 12-14). After Jackson continued to express some reluctance at the plea hearing, the trial court told him unequivocally that he should plead not guilty if that was the case:

> COURT:    . . . If you have been living at the foot of the cross, and you are as innocent as Ivory soap, if you are clean as the driven white snow, and you did not participate at all in this offense, plead not guilty. I mean if you are absolutely – you have been framed, had nothing to do, don't even know [Rafter Irving] and this other fellow [Watson], if you are innocent, I don't want you to plead guilty. If you hadn't done things, I didn't encourage him, I didn't have the car, I didn't have the gun, I didn't participate with these two guys, if you are absolutely morally innocent, didn't have anything to do, plead not guilty. Now, what are you going to do?

(Court Reporter's Record, Guilty Plea Hearing, April 1, 2002, at 15).  In response, Jackson admitted that he knew Rafter Irving and that he believed he would be convicted with the evidence in the State's possession.  (*See id*. at 16).  Jackson then agreed to release the jury panel that was waiting to try his case and to accept the plea bargain offered by the State.  (*See id*.).

The record shows that Jackson had an additional opportunity to raise concerns about his attorney's performance at a hearing held on the motion for new trial that he filed in an effort to set aside or withdraw the plea.  Jackson was represented by new counsel at that hearing, which was also held before a different state district judge.  (Court Reporter's Record, Motion for New Trial, May 29, 2002).  Jackson's original defense attorney appeared at that hearing and testified at length about the efforts that he made on his client's behalf to investigate and to prepare a defense.  (*See id*. at 13-92).  Jackson also testified at the proceeding.  After considering all of the testimony, the judge denied Jackson's motion for new trial.  (*See id*. at 169).

Where the defendant proclaims his innocence but pleads guilty anyway, due process is satisfied only if the state can demonstrate a "factual basis for the plea." *North Carolina v. Alford*, 400 U.S. 25, 38 & n.10 (1970).  Under *Alford*, "when a defendant pleads guilty while proclaiming his innocence, the court commits constitutional error by accepting the plea without ascertaining that there is a factual basis for it." *Orman v. Cain*, 228 F.3d 616, 621 (5th Cir. 2000) (quoting *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983)).  But,

"absent statements inconsistent with guilt, state courts are not constitutionally required to establish a factual basis for the plea of guilt." *Id.*

The record of the guilty plea hearing shows that Jackson did not claim innocence. Rather, Jackson's hesitation concerned generalized dissatisfaction about his counsel's pretrial investigation. This record shows that the trial court listened to Jackson's grievances about his attorney and conducted an inquiry about whether sufficient pretrial investigation had been performed before taking the guilty plea. The trial court also admonished Jackson at length and instructed him to plead "not guilty" if he wished and to proceed to trial. Under these circumstances, Jackson does not establish that the trial court abused his discretion by taking the plea or that he was denied any procedural safeguards during that proceeding. Accordingly, Jackson fails to demonstrate a constitutional violation and he is not entitled to federal habeas corpus relief on this issue.

### G.    Sufficiency of the Evidence

Jackson argues that there was no evidence or that there was insufficient evidence to support the conviction. The state habeas corpus court rejected this claim for alternative reasons, finding that Jackson's judicial confession and stipulation were "sufficient to support his plea of guilty" and, in addition, that Jackson's "insufficient evidence claim is not cognizable in a writ of habeas corpus." *Ex parte Jackson*, No. 60,803-01 at 275, Conclusions of Law, ¶¶ 6-7. As the respondent notes, it is well settled that challenges to the sufficiency of the evidence are not capable of review in a collateral proceeding. *See West v. Johnson*, 92 F.3d 1385, 1398, n.18 (5th Cir. 1996); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

Accordingly, Jackson's challenge to the sufficiency of the evidence is barred by the doctrine of procedural default.

Alternatively, Jackson's challenge to the sufficiency of the evidence is waived. By entering a guilty plea, petitioner waived his right to demand any evidence to sustain his conviction. *See United States v. Broce*, 488 U.S. 563, 569 (1989) (holding that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary"). State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed. *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986) (citing *Hobbs v. Blackburn*, 752 F.2d at 1082). Thus, the rule in *Jackson v. Virginia*, 443 U.S. 307 (1979), which mandates sufficient evidence from which a rational fact finder could find guilt beyond a reasonable doubt, is inapplicable to convictions based on a guilty plea. *See Smith*, 786 F.2d at 702 (citing *Kelley v. Alabama*, 636 F.2d 1082, 1083-84 (5th Cir. 1981)). Because Jackson has not shown that his guilty plea was involuntary, his allegation that his conviction was unsupported by sufficient evidence presents nothing for federal habeas corpus review. The respondent, therefore, is entitled to summary judgment.

## III.   PETITIONER'S MOTIONS

Jackson has filed a motion for an extension of time to respond to the summary judgment so that he can conduct discovery. In particular, Jackson has filed a motion for production of certain documents and hearing transcripts found in the state court record.

(Docket Entry No. 22). The motion could be construed as a request for a continuance to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure, which are "generally favored, and should be liberally granted." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)). However, to justify a continuance, the Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact. *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). In that regard, the movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment;  it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

As explained to the petitioner previously in this case, discovery is limited in habeas corpus proceedings. "Rule 6 of the Rules Governing § 2254 cases permits discovery only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). "Good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief." *Murphy*, 205 F.3d at 814. Before authorizing discovery, the Court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the

27

facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.* In that regard, petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.* "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

Jackson's motion, which is styled as a request for production of documents, asks for free copies of items that are already found in his state court record. (Docket Entry No. 22). It is well established in this circuit that an indigent inmate does not have a federally-protected right to a free copy of his transcript or other court records for use in a collateral proceeding. *See Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975) (citations omitted); *Colbert v. Beto*, 439 F.2d 1130, 1131 (5th Cir. 1971). Moreover, the Court has reviewed the record on its own and finds that none of the items requested by Jackson raise a genuine issue of material fact.

Jackson asks for a copy of his *pro se* appellate brief, which shows that he attempted to raise the claims in his federal habeas corpus petition on direct appeal. Jackson insists that this document will prove that his claims are not barred by the doctrine of procedural default because his claims were, in fact, presented on direct appeal. Although the brief shows that Jackson did attempt to submit his claims, his appeal was dismissed because his general notice of appeal did not properly invoke the appellate court's jurisdiction. Thus, although Jackson did present his claims on direct appeal, he did not do so in a procedurally proper manner.

More importantly, apart from the procedural bar, this Court has reviewed the merits of each of his claims and found that none of them warrants federal habeas corpus relief.

Jackson asks for a copy of the police investigation report, which allegedly contains "pertinent exculpatory evidence" that is material to his claim that trial counsel conducted an insufficient pretrial investigation. The police report is in the record and the Court has reviewed it. Jackson does not identify the so-called exculpatory evidence and a review of the police report does not disclose anything that undercuts his judicial confession. Thus, Jackson's general request for the police report does not raise a genuine issue of material fact or otherwise show that he is entitled to federal habeas corpus relief.

Jackson asks for the transcripts of a pretrial hearing held on March 27, 2002, the guilty plea proceeding on April 1, 2002, and the Motion for New Trial hearings held on May 8, 2002, and May 29, 2002. Jackson contends that testimony given in these proceedings is relevant to whether he received ineffective assistance of counsel such that his guilty plea was involuntarily made. Based on its review of these records, the state habeas corpus court found that Jackson's attorney was not deficient and that his guilty plea was voluntary. This Court has also reviewed these transcripts and concludes that they support the state court's findings. Jackson's general reference to the transcript invites a fishing expedition of the type that is prohibited by the federal habeas rules and fails to raise a genuine issue of material fact.

In addition, Jackson asks for copies of affidavits submitted in connection with his motion for new trial. These affidavits from family members, his girlfriend, and a neighbor purport to show that: (1) Jackson could not have committed the robbery because he was

watching movies at his mother's house on the night that it occurred; and (2) they were not contacted by his counsel about providing alibi testimony at trial.  The state habeas corpus court found that Jackson's proposed alibi witnesses were not credible and that his attorney's failure to pursue an alibi defense based on their testimony was not deficient because of testimony in the record which indicated that the witnesses would say whatever he wanted them to say. Jackson's discovery request presents nothing to rebut the state court's fact findings on this issue, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1), and therefore the affidavits do not raise a genuine issue of material fact.

In his motion for appointment of counsel, Jackson asks for discovery in the form of forensic tests performed on the audiotape, which he alleges will prove that it is not authentic and will show that the State presented "falsified" evidence.  Jackson did not raise an independent claim about the use of false evidence at the state court level and he has failed to exhaust his remedies with respect to this allegation.  To the extent that Jackson faulted his attorney for failing to challenge the authenticity of the tape, his attorney explained that he did not do so because Jackson admitted the voice on the tape was his.  *Ex parte Jackson*, No. 60,803-01 at 274, Findings of Fact, ¶ 11.  Jackson's mother and girlfriend listened to the tape and they also identified Jackson's voice. *Ex parte Jackson*, 60,803-01 at 274, Findings of Fact, ¶ 12. Jackson does not attempt to refute these factual findings, which are entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1), and he presents no more than speculation in an attempt to obtain discovery on this issue.  This is not enough to warrant discovery under the governing standard found in Rule 6 or to justify a continuance under

30

Rule 56(f).  Accordingly, Jackson's motions for a continuance to conduct discovery and for appointment of counsel are denied.

## IV.    RESPONDENT'S SUPPLEMENTAL MOTION

The respondent has recently submitted a motion for leave to file a supplemental motion for summary judgment to include as an additional reason for dismissal the argument that Jackson's petition is barred by the governing one-year statute of limitations.  The arguments raised by the respondent are well taken.  In particular, the respondent correctly notes that the federal habeas corpus petition, which is dated August 21, 2005, was filed well over a year after Jackson's conviction arguably became final on February 15, 2004.  This means that Jackson's petition is untimely under the governing limitations period established by 28 U.S.C. § 2244(d)(1).  The record further discloses no applicable statutory or equitable exception under the circumstances present in this case.[4]  The respondent's motion to supplement his original summary judgment motion will be granted.  Because the Court has already found that the petition does not warrant federal habeas corpus relief on the merits, however, the supplemental summary judgment motion is essentially moot.

## V.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that

---

[4]    Jackson filed his state habeas corpus application on August 23, 2004, which the Texas Court of Criminal Appeals denied on February 9, 2005.  *See Ex parte Jackson*, No. 60,803-01.

actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability),
*cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional
prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues
a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"
*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial
showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a
petitioner to demonstrate "that reasonable jurists would find the district court's assessment
of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 124 S.
Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the
controlling standard, this requires a petitioner to show "that reasonable jurists could debate
whether (or, for that matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were 'adequate to deserve encouragement to proceed
further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds,
the petitioner must show not only that "jurists of reason would find it debatable whether the
petition states a valid claim of the denial of a constitutional right," but also that they "would
find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529
U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring
further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
The Court concludes that jurists of reason would not debate whether any procedural ruling

32

in this case was correct or whether the petitioner has stated a valid claim. Accordingly, a certificate of appealability will not issue in this case.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The respondent's motion for summary judgment (Docket Entry No. 17) is **GRANTED**.

2.   The petitioner's motions for a continuance, for production of documents, and for appointment of counsel (Docket Entry Nos. 21, 22, 23) are **DENIED**.

3.   The respondent's motion to supplement his previously filed motion for summary judgment (Docket Entry No. 24) is **GRANTED**.

4.   The federal habeas corpus petition is **DENIED** and this proceeding is **DISMISSED** with prejudice.

5.   A certificate of appealability is **DENIED**.

The Clerk shall send a copy of this order to the petitioner.

SIGNED at Houston, Texas, on ___April 5___ 2006.

KENNETH M. HOYT
UNITED STATES DISTRICT JUDGE